Hillsborough,
No. 4331.

JOHN A. MONTRONE *v.* LOUIS ARCHAMBAULT & a.

Argued June 2, 1954.

Decided July 1, 1954.

*Morris D. Stein* (by brief and orally), for the plaintiff.

*Paul E. Nourie* and *Bartram C. Branch* (*Mr. Nourie* orally), for the defendants.

LAMPRON, J. We are of the opinion that there was sufficient evidence from which the jury could find that the defendants were negligent in the maintenance of their premises and that it was a

little more probable than otherwise that plaintiff's fall resulted from an artificial accumulation of ice resulting therefrom. *Bixby v. Thurber*, 80 N. H. 411; *Palmer v. Edgerly*, 87 N. H. 391; *Worthen v. Abbott*, 90 N. H. 164; *Abell v. Company*, 95 N. H. 439, 441.

Defendants' property is a two and a half story apartment house located at the corner of Walnut and West Hollis Streets. Its roof has an approximate pitch of 60 degrees and parts of it join to form a valley. The ground slopes downward in the direction in which the plaintiff was walking at the time of the accident. The house is about six or eight feet from the sidewalk. There is an asphalt covered area or apron from the house to the sidewalk which is approximately five feet wide with a "pitch of about 4 inches in the corner nearest the valley . . . and the other end pitches in proportion to the foundation." There is a curb about 6 inches thick and probably 10 inches high between the apron and the sidewalk. The apron pitches toward the sidewalk to keep water out of the cellar and to take care of the drainage from the roof so it will not go into the cellar.

There was testimony that: "Water accumulates from both roofs at the same time into the valley, then runs over down on to the apron" and "then from the apron, with that pitch," it goes "on to the sidewalk . . . There is broken-in places where ice constantly forming and melting and reforming again had chewed through the cement," of the curb between the apron and the sidewalk. "I have seen the rain come off the roof on the hard surface there and roll right on to the sidewalk." An expert testified that: "Gutters properly applied around the edges of the roof at the eaves and a drain spout draining into the city sewerage system in the cellar" or "a dry well dug in between the house and the sidewalk" very likely would take care of all the water coming off the roof.

This accident happened sometime after nine or nine-thirty in the morning of December 30. It was quite cold and below freezing. "December 29 the maximum temperature was 34°, and the minimum 4° below zero; snow, one hundredth of an inch. December 30, maximum temperature 45°, minimum temperature 16°; snow and rain, one and one-tenth inch." Such a precipitation is quite heavy and would cause the water to go down the center of the valley and flow out and be concentrated over the apron and on the sidewalk.

The condition of sidewalks generally that morning was: "Well, icy, a little snow just covered the ice, and it wasn't very slippery."

Plaintiff had walked some distance that morning and at the time of the accident was walking easterly on West Hollis Street in the middle of the sidewalk. "I didn't have no trouble until I came to this spot, and all of a sudden my feet just went up in the air and I landed on my back." His feet slid "a couple feet . . . It was all ice there. Couldn't get my hands. You know, it was—slide." "I could see there was ice there on the curb of the apron as I was trying to get up." You could get your footing on the other sidewalks "but you couldn't get no footing where I fell . . . There was a difference the ice was thicker there and it wasn't level. It was slant; that is how I happened to fall."

There was sufficient evidence of the defendants' negligence to take the case to the jury.

The defendants also contend that the facts are such that the plaintiff was guilty of contributory negligence as a matter of law. Plaintiff was walking slowly on the sidewalk because he knew it was slippery and that underneath the fine coating of snow there was probably ice and he might come to a slippery spot and slip. He knew there was apt to be ice along the sidewalk adjacent to defendants' premises and he "walked slow and careful." He had walked slowly and carefully from the time he left his house because it was slippery and he proceeded in the same manner at the place of the accident.

We cannot say that the only inference permissible from that evidence was that the plaintiff fully comprehended the danger and negligently chose to brave it rather than to avoid it. The facts are not so conclusive as to require a finding of contributory negligence as a matter of law. *Palmer* v. *Edgerly, supra,* 393; *Papakalos* v. *Shaka,* 91 N. H. 265, 269.

The defendants' motions were properly denied and the order must be

*Judgment on the verdict.*

All concurred.